Citation Nr: 1749198 
Decision Date: 10/31/17 Archive Date: 11/06/17

DOCKET NO. 11-30 145 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Phoenix, Arizona


THE ISSUES

1. Entitlement to an increased evaluation for a left hip disability since February 1, 2015, rated as 30 percent disabling for the period prior to September 30, 2016, and as 70 percent disabling thereafter.

2. Entitlement to a total disability rating based on individual unemployability (TDIU) due to the service-connected left hip disability.


WITNESS AT HEARING ON APPEAL

Veteran


ATTORNEY FOR THE BOARD

R. Kipper, Associate Counsel


INTRODUCTION

The Veteran served on active duty from January 2000 to February 2004.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from January 2009 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Milwaukee, Wisconsin, which continued a 10 percent disability rating for the Veteran's left hip disability. Jurisdiction was subsequently transferred to the RO in Phoenix, Arizona.

In November 2015, the Veteran testified at a videoconference hearing before the undersigned Veterans Law Judge. A transcript of the hearing has been prepared and associated with the claims file.

In February 2016, the Board granted increased ratings for the Veteran's left hip disability for the period prior to February 1, 2015, and remanded the issue of an increased rating for the period since February 1, 2015, for further development. The Board also noted that a claim of entitlement to a TDIU due exclusively to the service-connected left hip disability was raised by the record pursuant to Rice v. Shinseki, 22 Vet. App. 447 (2009). The Board remanded the issue of entitlement to a TDIU for additional development.

In a July 2017 rating decision, the RO increased the rating for the Veteran's left hip disability to 70 percent, effective September 30, 2016. Since that grant did not represent a total grant of benefits sought on appeal, the claim for increase remains before the Board. AB v. Brown, 6 Vet. App. 35 (1993).


FINDINGS OF FACT

1. Since February 1, 2015, the Veteran's left hip disability was manifested by markedly severe residual weakness, pain or limitation of motion following implantation of a prosthesis, but it was not productive of painful motion or weakness such as to require the use of crutches, or of the functional equivalent thereof.

2. The Veteran's service-connected left hip disability does not render him incapable of securing or following a substantially gainful occupation.


CONCLUSIONS OF LAW

1. Since February 1, 2015, the criteria for a 70 percent disability rating, but no higher, for a left hip disability are met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107(b) (West 2015); 38 C.F.R. §§ 3.102, 3.159, 3.321, 4.1-4.7, 4.30, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5054 (2016).

2. The criteria for a TDIU are not met. 38 C.F.R. §§ 3.340, 4.15, 4.16 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duties to Notify and Assist

Under applicable law, VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2015); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2016).

In the present case, VA's duty to notify was satisfied by way of October 2008 and July 2016 letters that were sent to the Veteran.

VA also has a duty to assist the Veteran in the development of the claim. This duty includes assisting the Veteran in the procurement of service treatment records (STRs) and pertinent treatment records and providing an examination when necessary. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159.

The record reflects that VA has made reasonable efforts to obtain relevant records adequately identified by the Veteran. Neither the Veteran, nor his representative, has identified any outstanding evidence, to include any other medical records, which could be obtained to substantiate his appeal.

As previously noted, the Veteran was provided an opportunity to set forth his contentions during a hearing before the undersigned in November 2015. In Bryant v. Shinseki, 23 Vet. App. 488 (2010), the Court held that 38 C.F.R. § 3.103(c)(2) requires that a "hearing officer" who chairs a hearing to fulfill two duties: (1) the duty to fully explain the issues and (2) the duty to suggest the submission of evidence that may have been overlooked. Here, the undersigned specifically noted the issue on appeal, to include the relevant timeframes at issue, clarified the Veteran's assertions when necessary, and clarified the evidence needed to substantiate the claim. Moreover, in a subsequent remand, the Board gave the Veteran the opportunity to submit additional evidence in support of his claim and to undergo a VA examination in order to determine the current severity of his service-connected left hip disability.

The Board thus finds that all necessary development has been accomplished and appellate review may proceed. See Bernard v. Brown, 4 Vet. App. 384 (1993).

II. Increased Rating

The Veteran contends that he is entitled to higher disability ratings for his left hip disability.

A. Legal Criteria

Disability ratings are determined by the application of the VA's Schedule for Rating Disabilities. Separate diagnostic codes identify the various disabilities. 38 U.S.C.A. § 1155 (West 2015); 38 C.F.R. § Part 4 (2016). Ratings for service-connected disabilities are determined by comparing the Veteran's symptoms with criteria listed in VA's Schedule for Rating Disabilities, which is based, as far as practically can be determined, on average impairment in earning capacity. Where there is a question as to which of two disability evaluations shall be applied, the higher evaluation is to be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating is to be assigned. 38 C.F.R. § 4.7. 

The Veteran's entire history is reviewed when making disability evaluations. See generally 38 C.F.R. § 4.1; Schafrath v. Derwinski, 1 Vet. App. 589 (1995). 
Where, as here, entitlement to compensation already has been established and an increase in the disability rating is at issue, it is the present level of disability that is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). The Board will also consider entitlement to staged ratings to compensate for times since filing the claim when the disability may have been more severe than at other times during the course of the claim on appeal. Hart v. Mansfield, 21 Vet. App. 505 (2007). 

In making all determinations, the Board must fully consider the lay assertions of record. A Veteran is competent to report on that of which he or she has personal knowledge. Layno v. Brown, 6 Vet. App. 465, 470 (1994). When considering whether lay evidence is competent the Board must determine, on a case by case basis, whether the Veteran's particular disability is the type of disability for which lay evidence may be competent. Kahana v. Shinseki, 24 Vet. App. 428 (2011); see also Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). 

After careful consideration of the evidence, any reasonable doubt remaining is resolved in favor of the Veteran. 38 C.F.R. § 4.3.

Disability of the musculoskeletal system is primarily the inability, due to damage or infection in parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination and endurance. Functional loss may be due to the absence or deformity of structures or other pathology, or it may be due to pain, supported by adequate pathology and evidenced by the visible behavior in undertaking the motion. Weakness is as important as limitation of motion, and a part that becomes painful on use must be regarded as seriously disabled. 38 C.F.R. § 4.40. In Mitchell v. Shinseki, 25 Vet. App. 32 (2011), the Court held that, although pain may cause a functional loss, "pain itself does not rise to the level of functional loss as contemplated by VA regulations applicable to the musculoskeletal system." Rather, pain may result in functional loss, but only if it limits the ability "to perform the normal working movements of the body with normal excursion, strength, speed, coordination, or endurance." Id.

When evaluating musculoskeletal disabilities, VA may, in addition to applying schedular criteria, consider granting a higher rating in cases in which the claimant experiences additional functional loss due to pain, weakness, excess fatigability, or incoordination, to include with repeated use during flare-ups, and those factors are not contemplated in the relevant rating criteria. See 38 C.F.R. §§ 4.40, 4.45; DeLuca v. Brown, 8 Vet. App. 202, 204-7 (1995). The provisions of 38 C.F.R. §§ 4.40 and 4.45 are to be considered in conjunction with the diagnostic codes predicated on limitation of motion. See Johnson v. Brown, 9 Vet. App. 7 (1996).

B. Facts and Analysis

As noted above, the current period on appeal is limited to the period since February 1, 2015, the date following the expiration of the 100 percent total rating assigned for one year after the Veteran's December 2013 hip replacement surgery. As relevant to the appeal period, the Veteran's left hip disability was assigned a 30 percent disability rating for the period from February 1, 2015 to September 30, 2016, and a 70 percent disability rating thereafter under C.F.R. § 4.71a, Diagnostic Code 5054 (hip replacement (prosthesis)). 

Diagnostic Code 5054 provides criteria for evaluating impairment arising from the prosthetic replacement of a hip joint. For one year following the implantation of a hip prosthesis, a 100 percent disability rating is assigned. Thereafter, the minimum disability rating that may be assigned post-hip replacement is 30 percent. A 50 percent disability rating is assigned for moderately severe residuals of weakness, pain, or limitation of motion. A 70 percent disability rating is assigned for markedly severe residuals of weakness, pain, or limitation of motion. A 90 percent disability rating is assigned for residuals of painful motion or weakness such as to require the use of crutches. 38 C.F.R. § 4.71a, Diagnostic Code 5054. 

The terms "markedly severe" and "moderately severe" as used under Diagnostic Code 5054 are not defined in the VA Schedule for Rating Disabilities. Rather than applying a mechanical formula to determine when symptomatology is "markedly severe" or "moderately severe," the Board must evaluate all of the evidence to ensure an "equitable and just" decision. 38 C.F.R. § 4.6.

Turning to the evidence of record, the Veteran underwent a left total hip arthroplasty on December 10, 2013. 

A January 2014 VA treatment record shows that the Veteran was "very happy with pain improvement" post-surgery. He reported that he returned to work part-time and that he would be going back to full-time work in two weeks. The Veteran reported pain of severity 4/10. On examination, the Veteran had no focal tenderness on palpation of the hip area, and his range of motion was "intact." 

A March 2014 VA treatment record shows that the Veteran reported that his hip pain was "gradually improving." 

The Veteran was afforded a VA examination in May 2014. The Veteran reported a constant "dull with sharp" pain with any range of motion. Range of motion testing revealed flexion to 70 degrees, with pain at 50 degrees, zero degrees of extension, abduction lost beyond 10 degrees, adduction limited such that the Veteran could not cross his legs, and rotation limited such that the Veteran could not toe-out more than 15 degrees. The Veteran was no able to perform repetitive-use testing due to weakness and pain. The Veteran had functional impairment of the hip and thigh due to less movement than normal, weakened movement, excess fatigability, pain on movement, and disturbance of locomotion. Muscle strength testing revealed 2/5 hip flexion, 2/5 hip abduction, and 2/5 hip extension. There was no ankylosis and no malunion or nonunion of the femur, flail hip joint, or leg length discrepancy. The examiner indicated that the Veteran had pain and weakness with any range of motion as a residual of hip surgery. The examiner also indicted that the Veteran had scars related to his left hip surgery that were not painful, unstable, or greater in area than 39 square centimeters. The Veteran did not use any assistive devices. Regarding functional impact, the examiner indicated that the Veteran's hip condition impacted his ability to work due to a reduced ability to walk over two blocks or a flight of stairs. The examiner opined that pain, weakness, fatigability, or incoordination significantly limit functional ability either during flare-ups or during repeated use, but the examiner indicated that it was not possible to estimate loss of range of motion or describe loss of function because there is no conceptual or empirical basis for making such a determination without directly observing function under those conditions. 

A March 2015 VA treatment record shows that the Veteran reported that he was doing better overall, and he denied any significant joint complaints. A September 2015 VA treatment record shows that the Veteran reported pain and weakness in the quadriceps muscles of both legs. He indicated that he was able to walk, but had trouble turning. He denied pain at rest and numbness. An examination of the hips revealed normal range of motion, normal sensation, and no tenderness, swelling, discoloration, crepitus, weakness, or deformity. The Veteran's gait was normal. The assessment was "bilateral hip pain related to the hip replacement normal PE except that he has poor muscle tone in both legs."

A January 2016 VA treatment record shows that the Veteran reported that his left hip had not gotten better following the hip replacement surgery. 

A February 2016 VA caregiver in-home assessment shows that Veteran was ambulatory and that his gait was stable without devices. He reported occasional use of a cane, but he was not observed using a cane during the home visit. A February 2016 VA primary care record shows that the Veteran reported pain in both hips. 

In February 2016, the Board granted increased ratings for the Veteran's left hip disability for the period prior to February 1, 2015. Specifically, the Board increased the rating to 30 percent prior to December 10, 2013, for impairment of the femur with marked hip disability. Additionally, the Board noted that for the period from December 10, 2013 (i.e., the date of the Veteran's hip replacement surgery) to January 31, 2015, the Veteran's left hip disability should have been assigned a 100 percent disability rating under 38 C.F.R. §§ 4.30 and 4.71a, Diagnostic Code 5054. The Board thus granted a 100 percent rating from December 10, 2013 to January 31, 2015.

However, the Board found that the evidence was insufficient to determine the appropriate disability rating of the Veteran's post-surgery residuals because the last VA examination addressing the Veteran's left hip disability occurred in May 2014, which was during the period of convalescence for which he was already receiving a temporary 100 percent evaluation. Thus, the Board found that it was not an accurate assessment of the post-convalescence residuals of the Veteran's left hip disability, and the Board remanded the issue of entitlement to an increased rating since February 1, 2015, for a new VA examination to determine the current nature and severity of the post-prosthesis left hip residuals. 

A March 2016 VA physical therapy consultation shows that the Veteran reported chronic iliotibial band tightness and hip pain. The Veteran ambulated into the physical therapy clinic with no assistive devices, and no significant gait dysfunction was noted. Range of motion testing revealed 93 degrees of active flexion of the left hip. The Veteran was tender to palpation bilaterally in the greater trochanters. The Veteran was prescribed shoe insoles to control foot position during weight bearing. During a May 2016 VA physical therapy visit, the Veteran demonstrated with weak left hip flexor and stiffness in left hip abduction. 

Pursuant to the Board's February 2016 remand instructions, the Veteran was afforded a VA examination in September 2016. The Veteran reported constant pain with tightness into the perineal area with standing or walking. The Veteran described functional loss or functional impairment of the left hip due to an inability to stand over 20 minutes, walk more than 60 yards, and climb less than one flight of stairs. Range of motion testing revealed flexion to 100 degrees; zero degrees of extension; and adduction limited such that the Veteran could not cross his legs. Pain was noted on flexion, abduction, and internal rotation, and the pain caused additional functional loss. There was evidence of pain on weight bearing, but no objective evidence of crepitus or localized tenderness or pain on palpation of the joint or associated soft tissue. The Veteran was not able to perform repetitive-use testing due to "considerable pain" with a single range of motion. 

The examiner indicated that the examination was being conducted during a flare-up and that pain, fatigue, weakness, and lack of endurance significantly limited functional ability during flare-ups. Muscle strength testing revealed 2/5 hip flexion, 3/5 hip abduction, and 3/5 hip extension. The examiner indicated that the Veteran had a reduction in muscle strength that was entirely due to the Veteran's service-connected left hip disability, but there was no evidence of muscle atrophy. There was also no evidence of ankylosis, malunion or nonunion of the femur, flail hip joint, or leg length discrepancy. The examiner noted that the Veteran regularly used shoes to reduce pain while walking. The examiner indicated that the Veteran had markedly severe residuals of weakness, pain, or limitation of motion following implementation of his left hip prosthesis. The examiner also described the functional impact of the Veteran's left hip disability as "marked limitation of standing, walking, climbing as above which prevented ability to climb, stand, and walk as noted above and [he] is unable to twist into small and limited places as needed in his work...in engineering occupation." 

Subsequent VA treatment records show continuing complaints of left hip pain and weakness.

In July 2017, the RO increased the rating to 70 percent, but only from September 30, 2016. The RO assigned the effective date of the 70 percent rating based upon the results of the September 2016 VA examination.

After review of the foregoing evidence, the Board finds that an increased rating of 70 percent is warranted for the Veteran's total left hip replacement for the entire period on appeal. In reviewing the September 2016 VA examination, specifically the examiner's statement that the Veteran had chronic residuals from the December 2013 left hip replacement surgery consisting of markedly severe weakness, pain, or limitation of motion following implementation of his left hip prosthesis, the Board finds that the examination provides evidence of the disability level of the Veteran's left hip dating from the time of the surgery. The September 2016 VA examination report is the first examination of record assessing the post-convalescence residuals of the Veteran's left total hip replacement. Further, the May 2014 VA examination shows similar findings as the September 2016 examination, such as zero degrees of extension, adduction limited such that the Veteran could not cross his legs, an inability to perform repetitive use testing, and muscle weakness. Moreover, VA treatment records during the relevant period confirm the Veteran's complaints of pain and weakness. This evidence suggests that the level of left hip disability has been effectively the same throughout the appeal period.

The Board thus finds it is reasonable to resolve any benefit of the doubt in favor of the Veteran and assume that the level of disability associated with the left hip replacement residuals was present prior to the date of the September 2016 VA examination. As such, the Board will apply this report of symptomatology to the entire period on appeal. Thus, the Board finds that the Veteran is entitled to a 70 percent rating for his left hip status post total hip replacement from February 1, 2015, the date following the expiration of the 100 percent total rating assigned following the hip replacement surgery. 

However, the Board finds that the criteria for a rating in excess of 70 percent were not met at any point during the rating period. In order to warrant the maximum rating of 90 percent under Diagnostic Code 5054, the evidence must show painful motion or weakness such as to require the use of crutches. 

In this case, the evidence does not indicate that the Veteran uses or needs crutches as would be required for a higher, 90 percent rating, at any time during the appeals period. The May 2014 VA examiner indicated that the Veteran did not use any assistive devices, and the Veteran's gait was described as normal during VA care in March 2015, February 2016, and March 2016. Although a February 2016 VA clinician noted that the Veteran reported an occasional use of a cane, no need for crutches was noted. Moreover, he was not using the cane during the visit and his gait was stable without devices. Similarly, the September 2016 VA examiner noted that the Veteran used shoes to help with pain control, but no use of or need for crutches was noted. 

As noted above, when evaluating disabilities of the musculoskeletal system, 38 C.F.R. § 4.40 allows for consideration of functional loss due to pain and weakness causing additional disability beyond that reflected on range of motion measurements. See DeLuca v. Brown, 8 Vet. App. 202 (1995). Further, 38 C.F.R. § 4.45 provides that consideration also be given to weakened movement, excess fatigability and incoordination. In this case, a higher rating based on these grounds is not warranted. The grant of a 70 percent rating under Diagnostic Code 5054 for markedly severe weakness, pain, and limitation of motion following implementation of his left hip prosthesis contemplates the entirety of the Veteran's left hip symptoms, including the Veteran's reports of pain, weakness, and fatigability. The evidence does not reflect functional impairment that more nearly approximates painful motion or weakness such as to require the use of crutches. As discussed above, the Veteran displayed a normal gait and he retained significant range of motion. Moreover, although muscle weakness was noted, there was no evidence of muscle atrophy. 

Further, even acknowledging that the Veteran's pain, fatigue, weakness, and lack of endurance may at times result in additional functional loss than that objectively demonstrated, the left hip disability picture has not more closely approximated the criteria for a rating of 90 percent under the provisions of Diagnostic Code 5054. The Veteran is competent to report symptoms of pain, weakness, and occasional use of a cane, and the Board finds him credible because his statements have been consistent and are bolstered by the medical evidence showing limited and painful motion and weakness. However, the Veteran has not asserted that he uses crutches, and he reported, at best, occasional use of a cane, and his gait was consistently noted as normal. Moreover, the September 2016 VA examiner opined that the left hip showed markedly severe residuals of weakness, pain, or limitation of motion following implantation of the prosthesis. Thus, even when consideration is given to the functional loss of the left hip due to pain, fatigue, weakness, and lack of endurance, the preponderance of the evidence is against a finding that the Veteran's left hip disability resulted in disability comparable to painful motion or weakness such as to require the use of crutches.

The Board has also considered whether entitlement to a higher evaluation or separate evaluation is warranted under any other applicable Diagnostic Code. Initially, the Board notes that, when a condition is specifically listed in the rating schedule (a hip replacement, in this case), it may not be rated by analogy. Copeland v. McDonald, 27 Vet. App. 333 (2015). Moreover, the required manifestations for an evaluation in excess of 70 percent under Diagnostic Codes 5250 (hip, ankylosis), 5254 (hip, flail joint), and 5255 (femur, impairment of) are not applicable. There has been no finding of left hip ankylosis, much less unfavorable or extremely unfavorable ankylosis (the foot not reaching the ground, necessitating crutches), as would be required for a 90 percent rating under Diagnostic Code 5255, and the evidence clearly shows that the Veteran retains significant range of motion in his hip. Similarly, as there is no evidence indicating a flail joint or fracture of the shaft or neck of the femur, no higher rating under Diagnostic Codes 5254 or 5255 is warranted.

The Board concludes that the objective medical evidence and the Veteran's statements regarding his symptomatology show disability that most nearly approximates that which warrants the assignment of a 70 percent disability rating for markedly severe weakness, pain, and limitation of motion following implementation of his left hip prosthesis. As shown above, and as required by Schafrath, the Board has considered all potentially applicable provisions of 38 C.F.R. Parts 3 and 4, whether or not they have been raised by the Veteran. The Board finds no provision upon which to assign a greater or separate rating.

III. TDIU

A TDIU claim was inferred as a part of the Veteran's current appeal of a higher rating for a left hip disability. See Rice v. Shinseki, 22 Vet. at 447, 454. As such, a Rice TDIU claim is limited to whether the Veteran is unemployable due to the underlying service-connected disability on appeal, which, in this case, is the Veteran's left hip disability. See id, at 454-455 (holding that when a request for TDIU is raised during the administrative appeal of the initial rating assigned for the underlying disability, it is not a separate claim for benefits, but rather is part of the adjudication of the claim for increased compensation for that underlying disability).

Where the schedular rating is less than total, a total disability rating for compensation purposes may be assigned when the disabled person is unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities, provided that, if there is only one such disability, this disability shall be ratable at 60 percent or more, or if there are two or more disabilities, there shall be at least one ratable at 40 percent or more, and sufficient additional disability to bring the combined rating to 70 percent or more. 38 C.F.R. § 4.16(a). 

However, a total rating based on individual unemployability may still be assigned to a veteran who fails to meet the percentage standards if he is unemployable by reason of his service-connected disabilities. If a Veteran is found to be unemployable solely due to his service connected disabilities, then the case is to be referred to the Director of Compensation Service for extraschedular consideration. The question therefore becomes whether or not the Veteran is unable to secure or follow a substantially gainful occupation solely due to service connected disabilities. 38 C.F.R. § 4.16(b).

Prior to February 1, 2015, and exclusive of periods of temporary total evaluations, the Veteran was service connected for the following disabilities: (i) left hip disability, rated as 30 percent disabling; (ii) right hip disability, rated as 10 percent disabling prior to January 1, 2015, and as 30 percent disabling thereafter; (iii) tinea versicolor, rated as 10 percent disabling; (iv) lipomas, rated as 10 percent disabling; (v) acne, rated as noncompensable; (vi) right hip scar, rated as noncompensable since November 5, 2013; and (vii) left hip scar, rated as noncompensable since April 2, 2014. With consideration of the bilateral factor, these disabilities combine to a 50 percent rating prior to January 1, 2015, and to a 60 percent rating thereafter. Thus, prior to February 1, 2015, the Veteran did not meet the schedular criteria for a TDIU outlined above. 38 C.F.R. § 4.16 (a). Nevertheless, the Board must consider whether the evidence otherwise warrants referral to the appropriate VA officials for entitlement to a TDIU on an extra-schedular basis under the provisions of 38 C.F.R. §4.16(b).

In light of the decision above to increase the rating for the Veteran's left hip disability to 70 percent, since February 1, 2015, the Veteran the Veteran was service connected for the following disabilities: (i) left hip disability, rated as 70 percent disabling; (ii) right hip disability, rated as 30 percent disabling; (iii) tinea versicolor, rated as 10 percent disabling; (iv) lipomas, rated as 10 percent disabling; (v) acne, rated as noncompensable; (vi) right hip scar, rated as noncompensable; and (vii) left hip scar, rated as noncompensable. With consideration of the bilateral factor, these disabilities combine to a 90 percent rating. Thus, since February 1, 2015, the Veteran meets the schedular requirements for a TDIU.

In the present case, the AOJ sent the Veteran a VA Form 21-8940 (Veterans Application for Increased Compensation Based on Unemployability) in December 2016. The Veteran did not return the VA Form 21-8940, which would have provided relevant information regarding his claim of entitlement to a TDIU. See Wood v. Derwinski, 1 Vet. App. 190, 193 (1991) ("The duty to assist is not always a one-way street. If a veteran wishes help, he cannot passively wait for it in those circumstances where he may or should have information that is essential in obtaining the putative evidence."). While the above-cited evidence reflects that the Veteran's left hip disability causes some occupational impairment, it has not been persuasively shown to impact him so severely as to completely preclude him from obtaining and maintaining substantially gainful employment. The evidence reflects that the Veteran has been gainfully employed or a full-time student throughout the pendency of this appeal. In this regard, a June 2010 treatment record shows that the Veteran reported being busy with work. A January 2014 VA treatment record shows that the Veteran returned to work after his hip surgery. A July 2015 VA treatment record shows that the Veteran reported recently being laid off from his job. Subsequent VA treatment records show that the Veteran was a full-time student earning a degree in robotics engineering. See, e.g. June 2017 VA Treatment Record ("Veteran reported he is not currently working, goes to ASU for Robotic Engineering; due to graduate one year."); August 2016 VA Treatment Record ("Currently in school for robotics, formerly worked at intel as a maintenance technician. He is also considering buying a franchise of a dental repair business."). 

Moreover, because the Veteran failed to provide the requested VA Form 21-8940, the Veteran's file lacks specific information about how the Veteran's service-connected left hip disability renders him unemployable. There is no evidence of when the Veteran became unemployed, and there is very limited information regarding his past employment experience and educational background. While the Board has tried to obtain additional evidence, the Veteran has not provided it. Given this, the Board finds that the most probative evidence shows that the Veteran is not unable to secure or maintain gainful employment due to his service-connected left hip disability.

In summary, the evidence of record does not persuasively show that the Veteran is unable to maintain substantially gainful employment due to his service-connected left hip disability. The Board acknowledges the medical and lay evidence that the Veteran's service-connected left hip disability impacts his occupational functioning. However, to the extent there is a negative impact, it has not precluded the Veteran from maintaining employment or going to school full time. Moreover, insofar as the Veteran's service-connected disabilities have an effect on his occupational functioning, a disability rating in itself is recognition that the ability to work is impaired. 38 C.F.R. § 4.1 (2016).

Thus, the Board finds that the criteria for TDIU are not met in this case on either a schedular or extraschedular basis. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the Veteran's claim, that doctrine is not applicable. See 38 U.S.C.A. § 5107(b); 38 C.F.R. §§ 3.102, 4.3; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990).


ORDER

Since February 1, 2015, entitlement to a disability rating of 70 percent for a left hip disability is granted, subject to the law and regulations governing the criteria for award of monetary benefits.

Entitlement to a disability rating in excess of 70 percent for a left hip disability, since February 1, 2015, is denied.

Entitlement to a TDIU is denied.



____________________________________________
DEBORAH W. SINGLETON
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs